UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION



*************************************************************************

| | | |
|---|---|---|
| DALLAS WHEELER and<br>LOIS WHEELER, | * | CIV 05-1052 |
| | * | |
| Plaintiffs, | * | |
| | * | |
| -vs- | * | ORDER AND OPINION |
| | * | |
| UNITED STATES DEPARTMENT OF | * | |
| AGRICULTURE, acting through | * | |
| FARM SERVICE AGENCY, | * | |
| | * | |
| Defendant. | * | |

*************************************************************************

This action for judicial review of a final agency decision of the United States Department of Agriculture ("USDA") was filed on November 17, 2005. The complaint and the civil cover sheet were filed that day. In almost every case filed in this District, the attorney, at the time of presenting the complaint to the clerk for filing, furnishes the summons for the signature of the clerk. The summons is then signed by the clerk and returned to the attorney to see to service of process. The normal practice, if the attorney has not sent the summons, is for a deputy clerk to telephone the attorney to make inquiry. I have no idea what happened in this case. Filing and service is the ultimate responsibility of the attorney for the plaintiff. It is not the responsibility of the clerk to supervise the attorney.

We do know that the deputy clerk (the same clerk who saw to the filing of the complaint) did not issue the summons until more than nine months later, namely on August 21, 2006. By this time, the time to accomplish service of process had long since expired. Plaintiffs had, pursuant to Fed.R.Civ.P. 4(m), 120 days after the filing of the complaint to accomplish service. Excluding the final Saturday and Sunday and excluding the date of filing the complaint, the deadline for service of process was April 18, 2006. The admission of service as to the United States Attorney was not signed by an assistant United States Attorney until September 5, 2006.

On motion of the government, the court allowed USDA until November 29, 2006, to answer or otherwise plead. An answer (Doc. 8) was filed on the deadline. One of the allegations was that plaintiff (sic) "failed to prove that the Complaint has been served

upon the Attorney General of the United States", asking that the action be dismissed for insufficient service of process.  Any such allegation would or should cause alarm bells to ring, especially when plaintiffs would have known that they had failed to make service as required by law.  They also had to have known about the terribly long delay in issuing the summons after the filing of the complaint.  Nevertheless, plaintiffs filed a brief (Doc. 11), without any mention of the question of proper service of process.

The court, on motion, granted USDA an extension of time to file a response to the brief of plaintiffs, the extension having been until November 30, 2007.  The answering brief (Doc. 18) was filed on the deadline.  USDA again raised and cited legal authorities to the effect that the complaint should be dismissed for failure to timely serve the Attorney General as required by Fed.R.Civ.P. 4(m).  USDA also pointed out that plaintiffs had failed to file proof of service, as required by Fed.R.Civ.P. 4(l).  USDA filed a declaration (Doc. 19) on November 30, 2007, proving the lack of service of process.  USDA made no mention of the initial and very significant problem, i.e. failure to serve anyone within the 120 day period after the filing of the complaint.

Plaintiffs filed a reply brief on December 15, 2007, addressing for the first time their failure to serve the Attorney General.  They set forth that co-counsel for plaintiffs thought the other attorney was responsible for seeing to such service of process.  There is really no evidence of that in the form of an affidavit but the court accepts as true the statement made by the officers of the court.  Plaintiffs concede that there is "not good cause for the failure to serve the Attorney General, but respectfully ask this Court to direct that service be effected within a specified time."  No explanation has been offered as to why plaintiffs did not immediately seek relief from the court upon reading the answer filed by USDA.  No explanation has been offered as to why plaintiffs did not attempt any service of process until more than nine months had expired following the filing of the complaint.  There was therefore not only a failure to serve the Attorney General but also a failure to serve the United States Attorney.  No explanation has been offered as to why there was no timely service on any party.  Far too much time has

2

elapsed without service of process as required by law.  There is a lack of due diligence here.

The court, in almost any given case, should do everything possible to permit parties to "have their day in court."  Any such decision granting additional time for service of process and excusing clear violations of the Federal Rules of Civil Procedure requires the exercise of careful discretion by the court.  Such concerns are less important if the underlying action has no apparent merit.  For reasons that will be discussed, this lawsuit has no apparent merit.

The issue in this case, apart from the lack of service of process, is whether there is substantial evidence to allow USDA to find that plaintiffs submitted one or more false claims and false information to USDA, thus permitting USDA to take the action it took.

The first issue deals with claims submitted as to seed costs.  The facts are basically undisputed.  Plaintiffs obtained a seed invoice from the Den Besten Seed Company with no prices shown.  Plaintiffs then altered the invoice, by filling in the seed price, representing to USDA that the seed company invoice was genuine and complete.  They knew this was not true and that they had not paid the seed company anything close to what plaintiffs placed on the invoice.  Wheelers knew they were submitting "false information."

The claim of plaintiffs that they thought they could be paid based on average South Dakota costs at a time when they knew that the actual cost was much less, makes no sense.  Plaintiffs could not explain at a hearing why (if they actually and in good faith thought they were entitled to average costs regardless of what the actual costs were) they submitted false information.  There is, of course, no rational or logical explanation.  A telling question was asked of Dallas Wheeler: "My question is--if it didn't matter what the cost of the seed was--and you were going to get the amount that was on the form that you said--why would you have to present an invoice with a price on it?"  The answer was: "Would you not need something when you'd go in for cost share?  What would she say if I said just take that amount over here?  She would need some kind of documentation

3

wouldn't she?" Dallas admitted that the agency would require documentation to decide the basis for the cost shares and that is why he submitted the (false) invoice.

The brief of plaintiffs (Doc. 11) states at page 3: "If the reimbursement was to be based on the average cost of the seed or 50% of $30.00 per acre of seeding according to specifications, then the prices listed on the invoice are irrelevant. What is important is whether the amounts of seed listed in the conservation plans were actually planted in the field." I disagree with counsel for plaintiffs. The issue before USDA was whether plaintiffs knowingly supplied false information or knowingly filed a false claim. 7 CFR §1410.61. There is no question that USDA could find that the invoice submitted was false and plaintiffs knew it was false.

Claims as to using average costs rather than actual costs fly in the face of all common sense. If there is an actual cost, USDA could logically and legally find that average costs mean nothing. Plaintiffs clearly altered a seed invoice, knowing that the actual costs were substantially lower than stated in the "doctored-up" invoice and knowing that a false claim was being presented to USDA.

Plaintiffs also claimed at the hearing to have obtained seed from farmers but refused to provide any names or documentation. If they actually had any such proof, the same should have been submitted for cost sharing. In addition, no such claimed invoice was submitted at the hearing which was conducted. This is despite the testimony of Dallas that he "would have showed them some additional seed receipts and explained my position to them."

Whether partial reimbursement for the seed was to be based on actual cost or average cost is entirely immaterial. The hearing officer completely missed the issue. Plaintiffs did not present the facts to the agency. Instead, they took a partially completed invoice and falsely represented that plaintiffs had received a billing from the seed company as shown on the invoice. That, of course, was false and was known by plaintiffs to be false. USDA could clearly find and conclude that fraud was indeed present.

4

The second issue is whether USDA could reasonably find and conclude that plaintiffs claimed reimbursement from USDA for tillage work that had not been completed. Plaintiffs submitted a claim stating that their son, Sterling Wheeler, "drilled 887.4 acres of CRP for my dad at $12.00 per acre with John Deere no till drill." They concocted the "bill" when Sterling was home from Presho, South Dakota. Dallas wrote out the phony invoice and caused his son to sign it, knowing that it was false. Sterling did not bill plaintiffs for any such amount and did not perform the work falsely represented. The evidence is clear that plaintiffs submitted a false statement to the agency and USDA could reasonably so find and conclude. The testimony of Dallas Wheeler shows that such claim was knowingly false. Their son was not sufficiently engaged in the farm operation of plaintiffs and only happened to be home when the contract was concocted.

Plaintiffs claimed to have performed the tillage work during the Winter of 1999, more specifically between October 12, 1999, and December 20, 1999. This, of course, flies in the face of all reason. Even Dallas makes clear in his testimony that he did nothing other than drag a flex coil drag set "very lightly" over his stubble because he thought "there had to be some type of tillage done . . ." He admitted that he "set the teeth so light (sic) that it would honestly just move the stubble and it would wiggle through there and it didn't bother and I could go pretty fast." Plaintiffs admit in Doc. 11, page 9, that "the ground was too dry and hard to till in November, but Dallas thought he was required to do something before he seeded. So, he made a pass over the ground with a flex coil." Dallas admitted in his testimony that what he did was not sufficient to disturb the ground and that what he did do was worthless. Yet he sought reimbursement. He did so falsely. Dallas claimed he had not been told by the government how deep to till. This, of course, is a ludicrous claim. What farmer or, for that matter, anyone living in "farm country" would think you could "till" the ground without disturbing it? What rational person would think you could be "working the ground" in November in South Dakota? The answer to both questions is "nobody."

What Dr. Sedivec, the expert witness for plaintiffs, found on November 7, 2000, is of no relevance. What government officials found in February and March of 2000 would be much more reliable and relevant. Certainly, it would not require an expert to determine that no tilling had been performed as claimed by plaintiffs. Dragging a farm implement across frozen and hardened ground, even assuming that Dallas did what he said he did, does not constitute tillage. Plaintiffs claim in Doc. 11 that "light tillage" was done. There was no evidence before the agency to support such a claim. The testimony of Dr. Sedivec attempted to state legal conclusions and interpretations, far beyond the expertise of the witness and invading the province of the agency as well as that of this court. At least in years past, tilling necessarily involved the use of a plow. The definition of "plow" is "an agricultural implement used for cutting, lifting, turning over, and partly pulverizing soil." Random House Unabridged Dictionary, Second Edition. This is nothing but a common sense definition. Plaintiffs are not to be permitted to "torture" the English language.

USDA could clearly reasonably find and conclude that fraud was present as to claims made for the conservation practice. Plaintiffs misrepresented what had been done and claimed reimbursement on December 22, 1999. They did not claim partial payment but the entire payment even though what was done was, in effect, nothing. They had no factual or legal basis for claiming even a partial payment. USDA could clearly find and conclude that there was no good faith exhibited on the part of plaintiffs.

Clearly, the USDA conclusion that the plaintiffs knowingly submitted one or more false claims is supported by substantial evidence and was the product of reasoned decision making. The decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Nor is there any basis for the claim of plaintiffs that agency action was arbitrary or capricious. The agency applied common sense. The hearing officer did not. The hearing officer also failed to engage in reasoned decision making whereas the NAD Director did so.

6

In addition, there clearly was substantial evidence to find that plaintiffs also materially and substantially misrepresented tillage.  Plaintiffs had their son sign a false certification as to tillage. This court will not reward any of this conduct by plaintiffs. USDA clearly acted within its rights and in accordance with federal law.

All the described conduct by plaintiffs and their son militates against granting any additional time for service of process.

This action should be dismissed.

Now, therefore,

IT IS ORDERED, as follows:

(1) This action is dismissed for failure to accomplish service of process as to the Attorney General and as to the United States Attorney for the District of South Dakota.

(2) Costs shall be taxed in favor of defendant and against plaintiffs.

Dated this 24th day of January, 2008.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
                    DEPUTY
      (SEAL)

7